Walter CHOWANIEC, Libelant,
v.
UNITED STATES of America,
Respondent.

Walter CHOWANIEC, Plaintiff,
v.
MARINE TRANSPORT LINES,
Inc., Defendant.

United States District Court
S. D. New York.
Nov. 1, 1956.

Walter J. Klein, New York City, for libelant and plaintiff, Xavier N. Sardaro, Brooklyn, N. Y., of counsel.

Kirlin, Campbell & Keating, New York City, for respondent and defendant, Roland C. Radice, New York City, of counsel.

RYAN, District Judge.

Walter Chowaniec, a seaman, has filed two suits to recover damages for personal injuries alleged to have been sustained by him on September 19, 1954, while he was employed aboard the U. S. Naval Ship Tamalpais, which was at the time operated and under the control of Marine Transport Lines, Inc.

One suit is a suit at law against the Marine Transport Lines, Incorporated, which operated, managed and controlled the vessel under contract with the owner, United States of America.

The other is a suit in admiralty against the United States of America, the owner of the vessel.

I read the libel as a libel in personam as well as one in rem, it being filed under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq. Both of these suits have been consolidated for trial.

The suit against the Marine Transport Lines, Inc. is predicated upon a claim asserted under the Jones Act and for unseaworthiness of the vessel. The suit against the United States of America is predicated upon a claim for unseaworthiness.

I find from the evidence that on December 19, 1954, the Tamalpais, a tanker, anchored at Stephenville, Newfoundland, there to discharge a cargo of fuel to the Harmon U. S. Air Force Base. There was no dock at that time at this installation and the vessel was moored in the basin.

The fuel cargo was discharged through a cargo hose which ran from the ship's manifold over the starboard side of the vessel and then through the water in the basin to the shore, where it was connected to pipes leading to the storage tanks on shore. The cargo hose was se-cured to the ship's manifold by a flange which had in it accommodations for at least eight bolts which secured the flange of the hose to the flange of the ship's valve.

The record shows that when the cargo hose was attached, according to the smooth log entries, it was an eight-inch hose. The use of this hose was continued during the entire discharging operation.

Discharging of the cargo through this hose continued through the 17th of December and throughout the entire day of December 18th and the night.

During that time the weather appears to have been cold but clear, save for some intermittent cloudy periods and the wind of not extraordinary violence or force.

The log shows that on December 19th, at 7.58, there was a strong wind of gale force and the discharging operations had to be stopped and the hose was disconnected. The hose was later reconnected that same morning at 10.10 and discharging operations were resumed ten minutes later, at 10.20. Later pressure on the discharging operations was reduced at 10.50.

The log shows that these winds of gale force continued throughout the morning and were particularly present at 12 noon. The testimony is that there were gusts of wind at that time of force 8 on the starboard beam. These gale force winds continued until 13.15 when the cargo operations aboard the ship were discontinued, and the discharge of the oil through the cargo hose was stopped and the valve on the ship was shut off.

However, the hose was not disconnected aboardship because they were awaiting word from shore that the shore valve had been shut down. It appears that after the valve on the ship had been shut down at 13.15, the chief mate of the ship ordered that some of the bolts and nuts fastened to them—which held the flange of the hose flush to the flange of the valve and made the coupling—should be removed. They were so removed, and they were removed prior to the time of

any line being tied to the hose to prevent the hose from being carried away and swung around the deck or falling into the water.

It was after these bolts had been removed from the flange that the plaintiff seaman here, Walter Chowaniec, was ordered, with others, to attempt to affix lines to the hose to make it secure to the ship. While he was about that operation with his fellow seamen, the hose broke away from the manifold because the remaining bolts either broke off or the nuts on them tore loose from the threads of the bolts.

After the cargo hose so broke loose from the manifold flange, it tossed around on the deck with the result that it struck the seaman Chowaniec at 13.35 on his left foot and inflicted serious injury to that foot.

█ I find that this injury was sustained by the seaman in the course of the performance of his duties as a seaman aboard this vessel, that no fault or negligence on his part contributed to its happening; that it occurred solely by reason of the negligence of the ship and those in charge of the ship in that the bolts or some of the bolts had been removed from the flange which held the cargo hose to the flange of the ship's manifold and to the flange of the ship's valve.

█ I find that the ship's equipment was entirely seaworthy, and it was only because of the removal of the bolts that the hose broke loose and caused injury to this seaman. I, therefore, dismiss the libel filed against the United States of America without costs.

After this seaman received his injury, he was taken immediately to shore, or within ten minutes after he was injured, and there treated in a shore hospital at Stephenville, Newfoundland. He remained in that hospital for a period of 38 days, from December 19, 1954 through January 25, 1955.

Then he was flown down here to New York and admitted as a patient to the United States Public Health Hospital at Staten Island on January 27, 1955, and remained as an in-patient in that hospital until March 31, 1955. He was discharged as an out-patient.

He was later readmitted on August 16, 1955. He received further treatment until September 2, 1955.

Computing these periods of hospitalization, they amount to 118 days.

There is no question that this plaintiff did receive a substantial injury to his left great toe, as the result of which there had to be a number of stitches taken, and there was a compound fracture of the proximal phalanx of the left great toe which caused the plaintiff seaman considerable pain and suffering and incapacitated him from the date of the injury until around the middle of September 1955.

He presently has a three and a half inch healed scar on the medial side of the large toe of the left foot and a half-inch scar between the third and fourth toes of the left foot.

I find that he suffers occasional pain, but it has not interfered with the performance of his duties as a seaman.

His wages or his income at the time that he received this injury were approximately $4,700 a year. I find that he was incapacitated for a period of nine months. I find that he lost wages, which he might have earned, of about $3,000 during that time.

█ There has been paid to the plaintiff on account of his maintenance the sum of $714. Giving him credit for that payment, I find he has suffered a loss of wages for this period of $2,500. I award him for the injury he sustained, for the pain and suffering he endured, an additional $4,000.

I give the plaintiff judgment in this case against the Marine Transport Lines, Inc. in the sum of $6,500. The clerk of the court is directed to enter judgment accordingly in favor of the plaintiff, Walter Chowaniec, against the Marine Transport Lines, Incorporated in the sum of $6,500 with costs and disbursements as they may be taxed.